**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**V.**<br><br>**DARYL F. HELLER** | **CRIMINAL NUMBER 25-366**<br><br>**CERTIFICATION OF CHRISTOPHER D. ADAMS IN SUPPORT OF MOTION TO WITHDRAW** |

I, Christopher D. Adams, of full age, hereby certify as follows.

1. I am an attorney at law admitted to practice before this Court and a Partner at the law firm of McCarter & English, LLP.

2. In light of the new scheduling order entered by the Court earlier this week, we are constrained to make this application before any more time passes.

3. On March 17, 2025, I was retained to represent Defendant Daryl F. Heller in connection with the above-captioned matter.

4. On March 17, 2025, Mr. Heller executed an engagement letter with McCarter & English, LLP. The engagement letter was specifically for "pre-indictment" representation. That engagement letter, however, was subject to the jurisdiction of the United States Bankruptcy Court. The Honorable Jerrold N. Poslusny, Jr. approved our retention, but ordered that only non-debtor estate assets such as Mr. Heller's 401k, can be used to compensate counsel because all other assets, including many of those related to his family, were encumbered and subject to either the Bankruptcy Court's jurisdiction, or were involved in (or soon to be) adversarial proceedings in the Court.

5. At or around the time of Mr. Heller's indictment, however, my partner, Daniella Gordon, Esq., who is a member of this bar, entered an appearance and sponsored my admission *pro hac vice* so that we could appear at his initial appearance and detention hearing. We did appear and successfully sought his release from custody over the government's request for detention.

6. Subsequent to Mr. Heller's indictment and release from custody, McCarter & English, LLP transmitted to Mr. Heller an updated retainer and engagement letter on September 15, 2025. That engagement letter identified the terms of representation by which counsel would be willing to proceed, including financial obligations.

7. Despite his acknowledgment of the September 15, 2025 engagement letter, and his assurances that he would execute it, Mr. Heller has never executed the post-indictment engagement letter nor has he satisfied the financial obligations he previously agreed to undertake. Mr. Heller has made some payments toward his financial obligations, but earlier this year in or about June 2026, according to Mr. Heller, he exhausted the entirety of the funds available in his 401k.

8. I have met with Mr. Heller on numerous occasions to discuss the facts of the case, potential trial strategy, non-trial resolution, and sentencing issues.

9. As Counsel has previously advised the Court, since being retained, we have continued to represent Mr. Heller in good faith and have engaged with the Department of Justice in an effort to explore and negotiate a possible resolution of this matter without the necessity of trial, despite no reasonable assurance of being paid.

10. After months of negotiation and hundreds of hours expended by counsel on his behalf, on June 22, 2026, Mr. Heller and the government reached an agreement to resolve the matter by plea as opposed to trial.

11. Between June 22, 2026 and the date on which Mr. Heller entered his guilty plea, August 10, 2026, counsel continued to represent him and spent considerable time and resources in negotiation with the government regarding the factual basis on which Mr. Heller would be willing to admit his crime. As the Court is aware, this included a very carefully drafted factual basis which was edited/rewritten no less than 5 times, and ultimately, Mr. Heller did not agree/admit to some of that factual basis. That disagreement was put on the record during the change of plea hearing. Ultimately, it required Mr. Heller to admit to only certain of the facts offered by the government and also involved motion practice.

12. Despite the efforts expended on his behalf and his promises to meet the obligations to which he agreed, Mr. Heller has failed to do so and does not reasonably appear to be able to. The seminal issue that impacts Mr. Heller's ability to do so is the Bankruptcy Court proceeding. All of Mr. Heller's assets are encumbered by that proceeding and, as we have identified for the Court, many of those family assets that could otherwise be used to satisfy his obligations are encumbered as well.

13. The upcoming Fatico hearing will require significant effort obtain the information necessary to establish the error in the government's loss calculation.

14. For instance, the financial managers of the funds and the accounting firms who managed them will need to be subpoenaed in order to obtain the Schedule K-1 for all investors for all years. According to the government, approximately 2,700 investors participated in the Prestige Funds over the course of multiple years. Each year those investors were provided with a Schedule K-1 that identified the amount of "bonus depreciation" that investor was entitled to take based on the investment they made that year. Pursuant to 26 U.S.C. § 168(k) "bonus depreciation" – also known as "additional first-year depreciation deduction" – allows an investor to deduct a large

percentage of an eligible asset's cost in the first year it is placed in service, rather than writing it off slowly over many years, and it can create a net loss to lower other taxable income, thereby saving that investor money without the need for a return on the investment. Frankly, that was a significant attraction to this investment opportunity and without the actual amounts allowed and taken each year by those investors, the amount of loss to be calculated at the Fatico hearing cannot be ascertained.

15. Additionally, there are investors who the government claims suffered losses who actually participated in the investment multiple times and whose aggregated return exceeded the aggregation of the principal, thereby negating loss. Finally, Mr. Heller will need to gather other tax information and bank records, access database records, and obtain other financial documents, which likely cannot be done before the date that briefing and exhibits are due. All of this is critical to present the defense case on why the Government loss calculation is inaccurate. None of this takes into consideration time for a retained expert to review and opine on the information obtained.

16. The resources needed for this endeavor under a compressed timeline are significant, and Mr. Heller does not have them nor will he reasonably acquire them in light of the bankruptcy proceedings. This does not include expert retention to synthesize and explain the calculation either. Respectfully, we submit that counsel should not be required to continue in these efforts on this timeline under these circumstances.

17. In addition to the financial need for withdrawal within the meaning of RPC 1.16(b) (5) & (6), the attorney client relationship has devolved into a breakdown in communication. If the Court requires more detail in that regard, I ask that the Court permit that detail be provided *ex parte* and *in camera* because of the attorney-client privilege.

18. When this issue of potential withdrawal was first brought to the attention of the Court in May of this year, the Government advised that it would not object to counsel's withdrawal. Now that the change of plea hearing has occurred, I have given the government notice that the motion will be filed. I have been authorized to advise the Court that "the government takes no position on the request and leaves it to the discretion of the Court."

19. Mr. Heller has known that I intend to file this motion to be relieved. In fact, we included the issue in our prior letter to the Court at his request when we sought an extension of the schedule. I have asked Mr. Heller if he consents to or objects to this motion and he has not answered that question.

20. Accordingly, I respectfully request that the Court enter an Order permitting the withdrawal of McCarter & English, LLP and Daniela Gordon, Esq. and Christopher D. Adams, Esq. as counsel for Mr. Heller, and appointing substitute counsel pursuant to the Criminal Justice Act, if appropriate.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 28, 2026.

Dated: August 28, 2026 By: *s/ Christopher D. Adams*

Christopher D. Adams, Esq.
**McCarter & English, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone (973) 622-4444
cadams@mccarter.com